**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SANA MUJAHID, on behalf of herself and all others similarly situated, | Case No. 1:25-cv-08012 |
| Plaintiff, | Judge: Hon. Jorge L. Alonso |
| v. | |
| NEWITY LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    APPLICABLE LEGAL STANDARDS ........................................................... 3

III.    ARGUMENT .................................................................................................... 4

     a.    Plaintiff's Claim Fails as a Matter of Law, and Therefore Should Be Dismissed, Because Section 227(c) of the TCPA Does Not Apply to Text Messages. ..................................................................................... 4

     b.    The Entire Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Failed to Plausibly Allege a Theory of Liability Under the TCPA ........................................................................... 8

IV.    CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ...................................................................10, 14

*Abante Rooter & Plumbing v. Farmers Grp., Inc.*,
2018 WL 288055 (N.D. Cal. Jan. 4, 2018).......................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................3, 4, 14

*Bank v. Alleviate Tax, LLC*,
2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024)......................................................................11

*Bank v. Philips Elecs. N. Am. Corp.*,
2015 WL 1650926 (E.D.N.Y. Apr. 14, 2015) .........................................................................13

*Bank v. Vivint Solar, Inc.*,
2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019).........................................................................14

*Barnes v. SunPower Corp.*,
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023)........................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................3, 14

*Belleville v. Florida Insur. Services, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024) .....................................................................9, 11

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022).......................................................................9, 12, 15

*Bonte v. U.S. Bank, N.A.*,
624 F.3d 461 (7th Cir. 2010) .......................................................................................4

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) .......................................................................................3

*Brown v. Nano Hearing Tech OPCP, LLC*,
2024 WL 3367536 (S.D. Cal. July 9, 2024) ........................................................................13

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021)..................................................................2, 9, 10

*Childress v. Liberty Mut. Ins. Co.*,
2018 WL 4684209 (D.N.M. Sept. 28, 2018).......................................................................9

*Cunningham v. Daybreak Solar Power, LLC*,
2023 WL 3985245 (N.D. Tex. June 13, 2023) .....................................................................15

*Cunningham v. Health Plan Intermediaries Holdings, LLC*,
2018 WL 835222 (N.D. Ill. Feb. 13, 2018) ........................................................................15

**TABLE OF AUTHORITIES**
(continued)

Page

*Davis v. CVS Pharmacy, Inc.*,
  2025 WL 2491195 (N.D. Fla. Aug. 26, 2025)....................................................5, 7, 8

*DiMaio v. Wexford Health Sources, Inc.*,
  2021 WL 1056848 (N.D. Ill. Mar. 19, 2021).............................................................4

*Dobronski v. Russo*,
  2024 WL 4363118 (E.D. Mich. Sept. 30, 2024)...................................................11, 13

*Doyle v. GoHealth, LLC*,
  2023 WL 3984951 (D.N.J. Mar. 30, 2023)............................................................13, 14

*Duran v. La Boom Disco, Inc.*,
  955 F.3d 279 (2d Cir. 2020).........................................................................................6

*Facebook, Inc. v. Duguid*,
  592 U.S. 395 (2021)......................................................................................................4

*Fisher v. Alarm.com Holdings, Inc.*,
  2018 WL 5717579 (N.D. Ill. Nov. 1, 2018) ............................................................15

*Frank v. Cannabis & Glass, LLC*,
  2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) .........................................................10

*Hernandez v. Select Portfolio, Inc.*,
  2015 WL 3914741 (C.D. Cal. June 25, 2015) ..........................................................14

*Hicks v. Alarm.com*,
  2020 WL 9261758 (E.D. Va. Aug. 6, 2020)................................................................9

*In re Joint Petition filed by Dish Network, LLC*,
  28 FCC Rcd. 6574 (2013) ........................................................................................9, 12

*In re Rules & Regs. Implementing the TCPA*,
  7 FCC Rcd. 8752 (1992).................................................................................................6

*In re Rules & Regs. Implementing the TCPA*,
  18 FCC Rcd. 14014 (2003)............................................................................................6

*In re Rules & Regs. Implementing the TCPA*,
  30 FCC Rcd. 7961 (2015).........................................................................................1, 12

*Jones v. Blackstone Med. Servs., LLC*,
  2025 WL 2042764 (C.D. Ill. July 21, 2025) .....................................................passim

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024)...................................................................................................4, 7

*Maldonado-Rodriguez v. Citibank, N.A.*,
  2013 WL 350814 (N.D. Ind. Jan. 28, 2013)..............................................................13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
  145 S. Ct. 2006 (2025)..................................................................................................7

**TABLE OF AUTHORITIES**
(continued)

Page

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)................................................................9, 11, 15

*Metzler v. Pure Energy USA LLC*,
2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023)................................................................10

*Moore v. CHW Group*,
2019 WL 3216029 (N.D. Ill., Jul. 17, 2019)................................................................10

*Murray v. Choice Energy, LLC*,
2015 WL 4204398 (S.D. Ohio July 10, 2015)................................................................11

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ................................................................2, 9

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019)................................................................8

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ................................................................11, 14, 15

*Rogers v. Postmates Inc.*,
2020 WL 3869191 (N.D. Cal. July 9, 2020)................................................................8

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ................................................................6

*Saunders v. NCO Fin. Sys., Inc.*,
910 F. Supp. 2d 464 (E.D.N.Y. 2012)................................................................2

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020)................................................................2, 9

*Stachowski v. Town of Cicero*,
425 F.3d 1075 (7th Cir. 2005) ................................................................4

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ................................................................3

*Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, &
the Use of Facsimile Machines*,
8 FCC Rcd. 480 (1993)................................................................5

*Thomas v. Taco Bell Corp.*,
582 F.App'x 678 (9th Cir. 2014)................................................................8

*Warciak v. Subway Rests., Inc.*,
2019 WL 978666 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020)................................................................9, 15

*Wilson v. Skopos Fin., LLC*,
2025 WL 2029274 (D. Or. July 21, 2025)................................................................8

*Woodard v. Health Ins. All.*,
2024 WL 942629 (N.D. Ill. Mar. 5, 2024)................................................................passim

## TABLE OF AUTHORITIES
**(continued)**

**Page**

### STATUTES

47 U.S.C. § 227(a)(4)............................................................................................5

47 U.S.C. § 227(c) .........................................................................................passim

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991)..........5

### OTHER AUTHORITIES

47 C.F.R. § 64.1200(c).................................................................................4, 6, 12

### RULES

Fed. R. Civ. P. 8...........................................................................................14

Fed. R. Civ. P. 12(b)(6)...............................................................................passim

## I.   __INTRODUCTION__

In her Complaint (*see* Dkt. 1), Plaintiff Sana Mujahid ("Plaintiff") alleges that Defendant Newity LLC ("Newity") violated the National "Do-Not-Call" ("DNC") Registry provisions of the Telephone Consumer Protection Act ("TCPA"). Plaintiff bases her claim on text messages that she baldly concludes Newity "delivered, or caused to be delivered," to her cell phone number without her consent. Dkt. 1, ¶ 16. As demonstrated below, however, Plaintiff has not stated such a claim or pled sufficient facts supporting one in accordance with bedrock federal pleadings standards and applicable federal law; and she is not entitled to any relief under the TCPA in this case in any event.

Though the TCPA is an important remedial statute designed to protect consumers from harassing telemarketers, federal courts do not hold TCPA plaintiffs to lower pleading standards or give plaintiffs armed with mere conclusions a free pass to discovery, either. This is for good reason. As the FCC noted, the TCPA unwittingly spawned a cottage industry of class action litigation in this country, "has strayed far from its original purpose," and has "become the poster child for lawsuit abuse" ever since its enactment. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). In fact, as this Court knows, dozens of new TCPA class actions are filed weekly (or daily) in federal courts in every Circuit, often by serial litigants looking for profit and not by consumers using the statute for its intended purpose. This is unsurprising, given the broad financial relief the TCPA affords and the ease with which such claims can be brought and quickly settled for far beyond their value.[1] And while attorneys' fees are not available under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from

---

[1]   Generally, plaintiffs can recover up to $500 in statutory damages per call, trebled for willful/knowing violations. *See* 47 U.S.C. § 227(c)(5). This may seem small individually, but can be ruinous in a class action, hence why most TCPA cases are styled as class actions and settled for much more than a named plaintiff would receive at trial than if they were to proceed on an individual basis.

innocent defendants through expensive class action litigation. *Saunders v. NCO Fin. Sys., Inc.,* 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012). Thus, given this potential for abuse, federal courts have strictly held TCPA plaintiffs to applicable pleadings standards, and have routinely dismissed inadequately-pled claims under Rule 12(b)(6). Plaintiff's Complaint here should suffer the same fate.

Indeed, while it is facially-deficient and ripe for dismissal under Rule 12(b)(6) in several respects, the primary defect with Plaintiff's Complaint is legal. This is because, under the plain and unambiguous language of the statute, text messages simply are not "calls" under the DNC provisions in Section 227(c) of the TCPA and its implementing regulations and, thus, are not covered by the statute. This forecloses entire Plaintiff's DNC claim in this case as a matter of law from the start.

But even if *arguendo* texts were covered, it is well established that all TCPA plaintiffs bringing any claim under any provision must first plead actual facts, not naked conclusions, supporting a viable theory of TCPA liability (*i.e.,* direct or vicarious liability) against the defendant, regardless of whether they plead facts supporting the other elements of their claim, or face dismissal.[2] This steadfast rule requires Plaintiff here to plausibly allege that Newity: (i) itself, not a third party, took the steps to "physically" send each of the subject texts directly to her cell phone, as required to plead direct TCPA liability, or (ii) had an agency relationship with or control over any third parties who did, as required to plead vicarious TCPA liability. At the same time, it is equally well-accepted

---

[2] *See, e.g., Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1–2 (N.D. Ill. Sept. 22, 2021) (dismissing TCPA complaint on these bases where the allegations did not "allow the Court to reasonably infer that defendant is liable for each call" and holding "[a]t the very minimum, plaintiff must allege in her complaint that defendant made each call that she seeks to hold it liable for."); *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (discussing the differences between direct and vicarious TCPA liability and the accepted standards for adequately pleading same, and dismissing where plaintiff failed to plausibly allege either theory); *Nelums v. Mandu Wellness, LLC,* 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject] text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.).

that taking an equivocating "either/or" approach and concluding the "defendant or an agent" placed the subject calls, or that relying solely on the pled content of an allegedly violative communication (even if the defendant's name or products are mentioned), is insufficient to plead such theories and avoid dismissal. Yet, that is all Plaintiff did in this case, which is likewise fatal to Plaintiff's entire Complaint under the weight of applicable federal authority on these points. Thus, for the reasons outlined above and discussed below, Plaintiff's Complaint should be dismissed under Rule 12(b)(6).

## II.  **APPLICABLE LEGAL STANDARDS**

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. Naturally, any legal claim brought in federal court mandates the pleading of sufficient facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegation[s]" will not suffice. *Id.* Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also id.* (all federal pleadings must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Put differently, and quite poignantly, "[i]t is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Accordingly, the Seventh Circuit has interpreted the holdings in *Twombly* and "*Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading…, rather than providing some ***specific facts*** to ground those legal claims[.] [Such plaintiffs] must do more." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added). Moreover, while this Court must generally accept well-pled factual allegations as true when ruling on a Rule

3

12(b)(6) motion, conclusory allegations, unwarranted or unreasonable inferences, and legal conclusions couched as facts do not suffice, need not be taken as true, and therefore will not prevent dismissal under this Rule. *See, e.g., Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 465 (7th Cir. 2010); *Stachowski v. Town of Cicero,* 425 F.3d 1075, 1078 (7th Cir. 2005); *DiMaio v. Wexford Health Sources, Inc.*, 2021 WL 1056848, at *2 (N.D. Ill. Mar. 19, 2021) (citing *Iqbal*, 556 U.S. at 678–79).

## III.   ARGUMENT

As shown below, Plaintiff's Complaint fails to state a plausible TCPA DNC claim or to plead sufficient facts supporting one here for several reasons, and therefore it should be entirely dismissed.

### a.   Plaintiff's Claim Fails as a Matter of Law, and Therefore Should Be Dismissed, Because Section 227(c) of the TCPA Does Not Apply to Text Messages.

Plaintiff's claim fails immediately, as the TCPA's DNC provisions simply do not apply to text messages. Section 227(c) of the TCPA provides a private right of action to "[a] person who has received more than one ***telephone call*** within any 12-month period … in violation of the regulations prescribed under this subsection …." 47 U.S.C. § 227(c)(5) (emphasis added). As courts have found, this section "does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *5 (C.D. Ill. July 21, 2025). The implementing regulations for Section 227(c) also reference only "telephone solicitations" and are likewise devoid of any reference to texts. *See* 47 C.F.R. § 64.1200(c). And these terms must be interpreted in the context in which the TCPA was enacted, in 1991. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405 (2021).

Indeed, as the Supreme Court recently reiterated, "[e]very statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Courts "must interpret what Congress wrote" when the statute was enacted and cannot rewrite the TCPA to update it for modern technology. *Facebook, Inc.*, 592 U.S. at 409. "Text messaging was not an

available technology in 1991 [when the TCPA was enacted], and thus 'telephone call' would ***not*** have included text messages or SMS messages." *Jones*, 2025 WL 2042764, at *4 (emphasis added); *see also* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991). "Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones*, 2025 WL 2042764, at *4. *See also Davis v. CVS Pharmacy, Inc.,* 2025 WL 2491195, at *1-4 (N.D. Fla. Aug. 26, 2025) (ruling similarly and dismissing DNC claim under Rule 12(b)(6) on this basis, holding: "***Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case.***") (emphasis added). This Court should reach the same sound conclusion in this case, and dismiss Plaintiff's whole Complaint on this basis.

While the term "telephone solicitation" is defined in Section 227(a)(4) to include "the initiation of a telephone call or message…," that definition does not alter the result. 47 U.S.C. § 227(a)(4). First, the reference to "message" presumably refers to artificial or prerecorded voice messages, which were expressly regulated by the TCPA at the time of its enactment. *See, e.g., Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, & the Use of Facsimile Machines*, 8 FCC Rcd. 480 (1993) (identifying the types of calls for which an individual may recover). But "Section 227(a)(4) does not refer to [a] 'text message'" and, as discussed above, "telephone call or message" could not have been interpreted in 1991 to include text messages, which were not yet in existence. *Jones*, 2025 WL 2042764, at *4. *See also Davis*, 2025 WL 2491195, at *2 ("[H]owever Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'" (citing 47 U.S.C. § 227(c)(5)). Second, the FCC's authority to implement regulations under

5

Section 227(c) was expressly limited to "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and the 9 months after December 20, 1991. 47 U.S.C. § 227(c). Those regulations were implemented in 1992, as authorized, and similarly do not discuss or refer to text messages at all. *See* 47 C.F.R. § 64.1200(c); *see also In re of Rules & Regs. Implementing the TCPA*, 7 FCC Rcd. 8752 (1992) (also devoid of any discussion of text messages).

In her Complaint, Plaintiff cites *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) for the proposition that a text message is a "call" as defined by the TCPA. *See* Dkt. 1, ¶ 53. While these are not facts, those decisions evaluated text messages under Section ***227(b)***, which governs allegedly automated calls and is not at issue in this case, and therefore are of no moment here. *See Duran*, 955 F.3d at 280 (addressing the definition of an "ATDS" under Section 227(b) of the TCPA); *Satterfield*, 569 F.3d at 954 (finding that the "language and purpose of the TCPA support the conclusion that the ***use of an ATDS*** to make any call, regardless of whether that call is communicated by voice or text, is prohibited") (emphasis added)). The Ninth Circuit in *Satterfield* also confirmed that "the statute is silent as to whether a text message is a call within the Act" and instead deferred to the FCC's 2003 Order in finding texts can be considered calls under Section 227(b). *Id*. Further, while the FCC previously stated in its 2003 Order that, under some circumstances, "calls" do include "text messages," that Order only addressed text messages in the context of the TCPA's automated calling provision, Section 227(b), which again is not at issue in this lawsuit. *See In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14115-16 at ¶ 165, n.603-605 (2003); *see also Jones*, 2025 WL 2042764, at *4 ("[O]n its face…, the 2003 Order explicitly references only Section 227(b)"). In short, these authorities are inapplicable in this case.

In any event, given more recent binding Supreme Court precedent, the FCC's prior 2003 interpretation is not entitled to any deference. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2013 (2025) (holding that "the Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct"); *see also Loper*, 603 U.S. at 401 (overruling *Chevron* deference, finding "*Chevron* gravely erred [ ] in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play"); *Davis*, 2025 WL 2491195, at *4 (declining to apply the 2003 Order). This is true even though Section 227(c) of the TCPA affords the FCC certain rulemaking authority. Under *McLaughlin* and *Loper*, federal courts <u>must</u> "independently interpret" statutes under ordinary principles of statutory interpretation—even where the statute delegates discretionary authority to an agency—and therefore must interpret the statute based on its plain language as "if no agency were involved." *Loper*, 603 U.S. at 400.

Applying *McLaughlin* and *Loper* here leads to only one result: the TCPA does not extend to forms of communications, like text messages, that did not exist when the TCPA was enacted. *See Jones*, 2025 WL 2042764, at *4-5 ("While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages.") (citing *Loper* and Alex Fitzpatrick, *How Text Messages Are Being Killed and Replaced*, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992 . . . .")); *see also Davis*, 2025 WL 2491195, at *1 (ruing similarly).

In sum, while Plaintiff may believe that there are compelling reasons to expand Section 227(c) of the TCPA to reach the realities of today's technologies, only Congress can do that. "It is

not for a court to legislate by reading into the TCPA something that is not there." *Jones*, 2025 WL 2042764, at *5. *See also Davis*, 2025 WL 2491195, at *3 ("Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'"). Consequently, as text messages are not covered under the plain language of Section 227(c) of the TCPA, Plaintiff's entire Complaint should be dismissed <u>with prejudice</u> under Rule 12(b)(6) on this basis alone.[3]

**b. The Entire Complaint Should Also Be Dismissed Under Rule 12(b)(6) Because Plaintiff Failed to Plausibly Allege a Theory of Liability Under the TCPA.**

Beyond the fundamental legal defect above, Plaintiff fails to plausibly allege a theory of liability under the TCPA against Newity (*i.e.*, direct or vicarious liability) in accordance with applicable federal law, which likewise warrants a complete dismissal under Rule 12(b)(6) here.

It is well-accepted there are "two potential theories of liability under the TCPA" that must be adequately pled in <u>all</u> cases to avoid a dismissal under Rule 12(b)(6): "(1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679 (9th Cir. 2014)). This rule means that, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc*., 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Courts in this District have firmly adopted this rule. *See, e.g., Woodard v. Health Ins. All.*, 2024 WL 942629, at *2-3 (N.D. Ill. Mar. 5, 2024) (dismissing TCPA complaint that failed to sufficiently allege a liability

---

[3] While one district court has reached a different conclusion, its holding relied heavily on FCC authority relating to Section 227(b), which again is not at issue here, and in any event is not entitled to deference. *See Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. July 21, 2025).

theory); *Bennett v. Celtic Ins. Co.*, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (same). Further, a plaintiff's failure to plausibly allege either liability theory in a complaint warrants dismissal of <u>any</u> TCPA claim under any provision in its <u>entirety</u>. *See, e.g., Woodard* and *Bennett, supra*; *see also Nelums,* 2023 WL 5607594, at *9. In this case, Plaintiff failed to plausibly allege either theory.

As to the former liability theory, federal district courts have uniformly determined that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" unlawful telemarketing calls, which in this context means to literally "physically place" a call or send a text message directly to the plaintiff. *See, e.g., Sheski*, 2020 WL 2474421, at *2 (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (dismissing where allegations did not "lead to the inference that [defendant] sent or was directly involved in sending the text messages at issue"); *accord Warciak v. Subway Rests., Inc.*, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020) (dismissing, in part, on this basis where plaintiff did not sufficiently allege defendant "physically sent out the text messages at issue").[4]

Put differently, for direct TCPA liability to attach in this case, Plaintiff must plausibly allege Newity <u>itself</u>, and not a third party, physically sent (made, initiated, placed, etc.) <u>each</u> text message at issue <u>directly</u> to her. *See, e.g., Bennett,* 2022 WL 865837, at *3 (dismissing where plaintiff did not adequately allege that the defendant itself physically placed the calls at issue); *Brownlee,* 2021 WL 4306160, at *1–2 (dismissing TCPA complaint where the allegations did not "allow the Court to

---

[4] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims like Plaintiff's (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to "physically" place the phone calls at issue. *See, e.g., Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part,* 2024 WL 2794108 (May 31, 2024); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020). This represents a clear majority rule, applied nationwide.

reasonably infer that defendant is liable for each call" and holding "[a]t the very minimum, plaintiff must allege in her complaint that defendant made each call that she seeks to hold it [directly] liable for."); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis where plaintiffs did not plausibly allege the "[d]efendant itself" made the calls); *Metzler v. Pure Energy USA LLC,* 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis and holding that all TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call").

Consistent with bedrock federal pleading standards, however, courts in and beyond this Circuit have also correctly recognized that bald conclusions lacking in specific factual support will not suffice to state a plausible direct TCPA liability theory, and therefore have routinely dismissed such facially-defective claims at the pleadings stage. As one such court held, "[m]erely alleging that [a defendant or an agent] 'made' or 'initiated' [a] call" or sent a text message in conclusory fashion "is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). Countless other courts in this District and elsewhere have ruled similarly and thus have often dismissed such faulty claims under Rule 12(b)(6). *See, e.g., Woodard,* 2024 WL 942629, at *3 (dismissing on this basis, holding: "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal.") (citing, *inter alia, Brownlee* and *Moore v. CHW Group,* 2019 WL 3216029, at *2 (N.D. Ill., Jul. 17, 2019)); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (holding that, "at the pleadings stage [in TCPA cases], [a] plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing on the basis where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's

10

allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing where plaintiff concluded one defendant "physically" placed the subject calls, noting the "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing on this basis, holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead any theory of TCPA liability); *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing TCPA claim on this basis, holding that "simply asserting a purported fact does not make it one, where there are no factual allegations to support the asserted conclusion").

Myriad courts have also recognized that even a call or text allegedly offering the defendant's products, identifying the defendant by name, and/or originating "from" the defendant does not, standing alone, allow for a plausible inference that the defendant itself (and not a third party) physically made or initiated any call or text for direct liability purposes. *See*, *e.g.*, *Meeks*, 2018 WL 1524067, at *1–5 (finding no direct liability, even though at-issue text identified the defendant by name and contained a link to its website); *Belleville*, 2024 WL 2342337, at *1-4 (dismissing on this basis, even though one caller allegedly said they were calling "from" the defendant and provided the defendant's website); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"). Together, these well-reasoned authorities (among others) show the alleged content of the subject communications alone is not dispositive of this issue.

This accepted approach to evaluating the facial sufficiency of direct TCPA liability claims under Rule 12(b)(6) is in recognition that companies often hire third parties to handle their outbound communications. *See, e.g., In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. at 7980 (there must be a "direct connection between a person or entity and the making of a call" for direct liability to attach); *Bennett*, 2022 WL 865837, at *3 ("[A] defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf."). For example, a company could "cause" a text message to be physically "delivered" by a third party vendor, as Plaintiff alleges here. *See, e.g.,* Dkt. 1, ¶ 14 ("Defendant delivered, or caused to be delivered, at least two text messages" to Plaintiff's cell phone). Such a communication would naturally identify the defendant or its products by name and may have originated from the defendant in a technical sense. But it would not have been physically sent by the defendant itself to the plaintiff, which is what matters for direct TCPA liability. Logically, and as a matter of law, an indirect connection to a call placed by a third party is not "direct" TCPA liability. *See In re Dish Network, LLC*, 28 FCC Rcd. at 6583 (ruling that direct TCPA liability "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call" by a third party).

Applying the foregoing firmly-rooted legal principles here also dooms Plaintiff's entire Complaint. For example, rather than following federal pleading standards, the Complaint merely contains a handful of naked conclusions, each regurgitating the statutory text and other authority but lacking in any requisite factual enhancement, stating that "Defendant delivered, or caused to be delivered" the subject texts or the like. *See* Dkt. 1, ¶¶ 14, 16. *See also id.* ¶ 57 ("Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations" to Plaintiff and the putative class members.); ¶¶ 19, 23, 30, 58 (containing similar allegations, suggesting

possible third party involvement). In other words, at bottom, Plaintiff concludes that either Newity itself sent the texts or unknown third parties did (*i.e.*, Newity "caused" a third party to send them). Yet, even if this Court takes these few ill-pled allegations as true (and it should not), myriad federal courts have recognized that the alleged content of a call, even if a defendant's name is mentioned or its products are sold (which is all Plaintiff offers), is not dispositive of direct TCPA liability standing alone. *See* discussion at pp. 9-12, *supra*. In fact, federal courts have found that such conclusory and equivocating allegations are "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added).

Such is particularly true when it comes to pleading TCPA claims, as federal district courts across the country have squarely rejected such a clearly flawed "either/or" approach to pleading TCPA liability theories. *See, e.g., Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without supporting facts suggesting the defendant itself physically placed each call); *Dobronski*, 2024 WL 4363118, at *5 (a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead any TCPA liability liability); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing and holding allegations that the alleged calls were "from Defendant, its employees and/or agents" insufficient for directly liability, without more); *Bank v. Philips Elecs. N. Am. Corp.*, 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (plaintiff's allegations the calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct TCPA liability). These logical decisions reflect a proper application of federal pleadings standards in the TCPA context. Indeed, if all it took for a plaintiff to sufficiently allege a TCPA liability theory was for the call to identify the defendant's name or products, there

13

would be no need to differentiate between direct and vicarious liability theories in a complaint, and no TCPA complaint would ever be dismissed under Rule 12(b)(6) on these grounds. That is plainly <u>not</u> the law, as the many cases cited herein all show. But, on the whole, Plaintiff's obviously directly contradictory allegations here not only fail to state a plausible direct TCPA liability theory under the weight of applicable authority, but they also "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot avoid dismissal at the pleadings stage in <u>any</u> case. *Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015).

Moreover, Plaintiff's Complaint is perhaps more notable for what facts it <u>omits</u> on this front, than for what few (if any) facts it contains. For example, Plaintiff does <u>not</u> plausibly allege, nor state even in a conclusory fashion, that (i) her Caller ID identified "Newity" as the sender of each (or any) text; (ii) she ever communicated with an Newity *employee* through these text messages, or (iii) Newity owns or uses the phone number used to send them. Such facts *might* have supported a direct TCPA liability theory here, if pled, as other courts have found. *See, e.g., Aaronson,* 2019 WL 8953349, at *2 (dismissing on this basis where the complaint lacked such requisite contextual details); *Rogers v. Assurance IQ*, 2023 WL 2646468, at *5 (same); *Doyle,* 2023 WL 3984951, at *4–6 (dismissing where plaintiff did not plausibly "allege that the number associated with the call …belonged to [d]efendant"); *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (dismissing where complaint was "silent as to the caller ID displayed" during the subject call). That Plaintiff did not allege such facts here—which should be within her knowledge if they exist at all—is both telling and fatal.

In sum, as the late Judge Leinenweber aptly held when dismissing a similarly-defective TCPA claim on this basis, "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal." *Woodard,* 2024 WL

942629, at *3. This Court should rule similarly, as that is plainly all Plaintiff tried to do here. As such, Plaintiff's Complaint should be dismissed for failing to allege a plausible direct liability theory.

Lastly, despite including allegations in her Complaint vaguely suggestive of possible third party involvement, as noted above, Plaintiff does not assert any factual allegations remotely supporting an inference that Newity was in a common law agency relationship with any third party that called her. Nor does she allege Newity had specific "control" over the "manner and means" of any third party caller's telemarketing campaign, which is the well-accepted touchstone of vicarious liability in a TCPA case and must also be adequately pled in all cases, even in a conclusory fashion. *See, e.g., Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023); *Rogers*, 2023 WL 2646468, at *6; *Meeks*, 2018 WL 1524067, at *6 (all dismissing on this basis where the plaintiffs omitted facts supporting an inference of such specific "control"). Thus, Plaintiff's Complaint should also be dismissed on vicarious TCPA liability grounds. *See, e.g., Warciak, Woodard*, and *Bennett, supra*; *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL 835222, at *5-6 (N.D. Ill. Feb. 13, 2018); *Fisher v. Alarm.com Holdings, Inc.*, 2018 WL 5717579, at *3-4 (N.D. Ill. Nov. 1, 2018) (each dismissing on vicarious TCPA liability grounds).

Accordingly, the Complaint fails to state a plausible direct or vicarious TCPA liability theory in accordance with federal law. It should therefore also be dismissed in its entirety on these grounds.

## IV.   **CONCLUSION**

For all of the foregoing reasons, Plaintiff's entire Complaint should be dismissed.

Dated: September 8, 2025                                Respectfully submitted,

By: /s/ *A. Paul Heeringa*
A. Paul Heeringa (IL Bar # 6288233)
**Manatt, Phelps & Phillips, LLP**
151 N. Franklin Street, Suite 2600
Chicago, IL 60606
Telephone: (312) 529-6300
Email: pheeringa@manatt.com

*Counsel for Defendant*

15

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on, September 8, 2025, a true copy of the foregoing was filed electronically using the Court's CM/ECF system, to be served via operation of the Court's electronic filing system upon all counsel of record.


*/s/ A. Paul Heeringa*