**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SANA MUJAHID, on behalf of herself and all
others similarly situated,

          Plaintiff,

    v.

NEWITY LLC,

          Defendant.

Case No. 1:25-cv-08012

Judge: Hon. Jorge L. Alonso

**<u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I.  Section 227(c) of the TCPA Does Not Cover Text Messages. ........................................... 4

II.  Plaintiff Fails to Plausibly Allege a Theory of TCPA Liability Against Newity. ........... 10

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Aaronson v. CHW Grp., Inc.*,
   2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ...................................................13, 14

*Adam v. CHW Grp., Inc.*,
   2021 WL 7285905 (N.D. Iowa Sept. 9, 2021) ........................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................14, 15

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*,
   708 F.3d 737 (6th Cir. 2013) ...................................................................2, 4, 5, 8

*Bank v. GoHealth, LLC,*
   2021 WL 2323282 (E.D.N.Y. Mar. 8, 2021), *report and rec. adopted,* 2021 WL
   1884671 (May 11, 2021) ........................................................................................13

*Beckman v. Chicago Bear Football Club, Inc.*,
   No. 17 C 4551, 2018 WL 1561719 (N.D. Ill. Mar. 30, 2018) ...............................15

*Bradshaw v. CHW Grp., Inc.*,
   2025 WL 306783 (D.N.J. Jan. 24, 2025)...................................................11, 12, 13

*Davis v. CVS Pharmacy, Inc.*,
   2025 WL 2491195 (N.D. Fla. Aug. 26, 2025) .......................................... passim

*El Sayed, v. Naturopathica Holistic Health, Inc.*,
   2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) .......................................... passim

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021)...............................................................................................10

*Frank v. Cannabis & Glass, LLC*,
   2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ...........................................13, 14

*Hulce v. Zipongo Inc.*,
   132 F.4th 493 (7th Cir. 2025) .................................................................................5

*Hurley v. Messer*,
   2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) .......................................................14

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*,
   2015 WL 13648356 (W.D. Ark. June 16, 2015) ...................................................14

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
   18 F.C.C. Rcd. 14014 (2003)...................................................................................6

*In Re Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing
   the TCPA of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*,
   38 F.C.C. Rcd. 12247 (2023)...............................................................................7, 8

*Jones v. Blackstone Med. Servs., LLC*,
   2025 WL 2042764 (C.D. Ill. July 21, 2025).....................................................1, 3, 6, 8

**TABLE OF AUTHORITIES**
(continued)

Page

*Katz v. CHW Grp., Inc.*,
    2023 WL 6445798 (W.D. Ark. Sept. 29, 2023) ...................................................... 13

*Klein v. Com. Energy, Inc.*,
    256 F. Supp. 3d 563 (W.D. Pa. 2017) ............................................................... 11

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ................................................................................. 3, 7, 8

*Lozano v. Twentieth Century Fox Film Corp.*,
    702 F. Supp. 2d 999 (N.D. Ill. 2010) .......................................................... 7, 8, 10, 11

*Marks v. Unique Lifestyle Vacations, LLC*,
    2024 WL 1051974 (E.D. Pa. Mar. 11, 2024) ......................................................... 12

*McCarrell v. Offers.com LLC*,
    2019 WL 3220009 (W.D. Tex. July 16, 2019), *report and rec. adopted,* 2019 WL
    6048012 (W.D. Tex. Aug. 20, 2019) ................................................................... 5

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*,
    606 U.S. 146 (2025) ................................................................................. 3, 5, 7

*Mims v. Arrow Financial Srvs., LLC*,
    565 U.S. 368 (2012) ..................................................................................... 1

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ......................................................................... 1, 8

*Scruggs v. CHW Grp., Inc.*,
    2020 WL 9348208, . (E.D. Va. Nov. 12, 2020) ...................................................... 15

*Sheski v. Shopify*,
    2020 WL 2474421 (N.D. Cal. May 13, 2020) ...................................................... 13, 14

*Slominski v. Globe Life Inc.*,
    2024 WL 556978 (E.D.N.C. Feb. 12, 2024) ......................................................... 12

*Smith v. v. Am.-Amicable Life Ins. Co.*,
    2022 WL 1003762 (E.D. Pa. Apr. 4, 2022) ......................................................... 13

*Stemke v. Marc Jones Constr., LLC*,
    2021 WL 4340424 (M.D. Fla. Sept. 23, 2021) ..................................................... 3, 10, 13

*Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*,
    143 F.4th 1331 (11th Cir. 2025) ...................................................................... 9

*Taylor v. Suntuity Solar LLC*,
    2024 WL 964199 (M.D. Fla. Mar. 6, 2024) .......................................................... 12

*Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, &
    the Use of Facsimile Machines*,
    8 FCC Rcd. 480 (1993) ................................................................................. 4

*Tuso v. Lennar Corp.*,
    2024 WL 1239474 (S.D. Fla. Mar. 22, 2024) ...................................................... 10, 14

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Wilson v. Medvidi, Inc.*,
   2025 WL 2856295 (N.D. Cal. 2025) ..........................................................4, 5, 9, 10

*Wilson v. Skopos Fin., LLC*,
   2025 WL 2029274 (D. Or. July 21, 2025)...........................................................9

*Younge v. Berman*,
   2023 WL 2374781 (N.D. Ill. Mar. 6, 2023)................................................10, 11, 14

## STATUTES

47 U.S.C. § 227..................................................................................... passim

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c).............................................................................5, 6

137 Cong. Rec. S16204-01, 1991 WL 229525, at S16205 ........................................2

Cambridge Dictionary Online, available at
   https://dictionary.cambridge.org/us/dictionary/english/sedan (last visited October 27,
   2025) .............................................................................................2

S. Rep. No. 102–178 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968 ........................1, 2

## RULES

Fed. R. Civ. P. 12(b)(1)...........................................................................13

Fed. R. Civ. P. 12(b)(6)...................................................................1, 4, 13, 14

As demonstrated in Newity's Motion to Dismiss, Plaintiff's First Amended Complaint (Dkt. 20, "FAC") is ripe for dismissal in its entirety and with prejudice under Rule 12(b)(6) for several reasons. The primary reason is because Section 227(c) of the TCPA—the sole provision Plaintiff invokes in her FAC—***simply does not apply to text messages***. *See, e.g.,* Dkt. 23 at 4-8 (citing and discussing, *inter alia*, *Jones v. Blackstone Med. Servs., LLC,* 2025 WL 2042764, at *1-5 (C.D. Ill. July 21, 2025); *Davis v. CVS Pharmacy, Inc.,* 2025 WL 2491195, at *1-4 (N.D. Fla. Aug. 26, 2025)); *see also El Sayed, v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025). Plaintiff's Opposition (Dkt. 30) fails to refute this well-reasoned conclusion.

Instead, Plaintiff invites the Court to ignore statutory construction principles, rule differently than its sister courts correctly did on this point, and find here that "the plain meaning of the word 'call' in the TCPA encompasses any attempt to communicate by phone, 'regardless of whether that call is communicated by voice or text.'" Dkt. 30 at 1 (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)). The Court should decline. As one district court aptly held when dismissing a TCPA DNC claim on this basis, "in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication." *El Sayed*, 2025 WL 2997759, at *2 (adopting the *Davis* court's reasoning and holding text messages are not calls under Section 227(c)).

Indeed, the TCPA was enacted for a specific and limited purpose: to protect the privacy interests of residential subscribers by placing restrictions on unsolicited autodialed and prerecorded marketing calls to the ***home***. *See, e.g.,* S. Rep. No. 102–178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968 ("The reported bill regulates the manner (that is, the use of an artificial or prerecorded voice) of speech and the place (the home) where the speech is received."); *Mims v. Arrow Financial Srvs., LLC,* 565 U.S. 368, 384 (2012) ("'Computerized calls are the scourge of

modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.'") (quoting 137 Cong. Rec. S16204-01, 1991 WL 229525, at S16205). It does not apply to all calls, much less all forms of communication to or from a phone, as Plaintiff suggests. *See, e.g., Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 743 (6th Cir. 2013) ("Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls placed by 'live' persons' on the other.") (citing S.Rep. No. 102–178, at 4–5 (1991), *reprinted in 1991* U.S.C.C.A.N. 1968 at 1972)).

Plaintiff's attempt to compare the TCPA to a parking regulation applying to two different types of vehicles therefore is a false equivalence that falls flat. *See* Dkt. 30 at 1, 12 (arguing the TCPA applies to both texts and phone calls, just as a parking regulation passed in 1991 would apply equally to both "sedans" and Cybertrucks, even though Cybertrucks did not exist in 1991). Indeed, this odd comparison is not remotely apt in this context. Cybertrucks and "sedans" are similar modes of transportation (*e.g.*, four wheels, doors, seats, seatbelts, etc.), are operated in the same way (*e.g.*, step on the accelerator and brake, steer, etc.), and, more importantly, are both land-based vehicles that might park on a street or in a parking lot. Cybertrucks and "sedans" would thus naturally be subject to the same regulations regardless of the year manufactured. They are just variations of the same technology.[1] But parking (or other) regulations applicable to cars do not apply to ***airplanes***, even though airplanes generally facilitate transportation too. The same would also be true for commercial airplanes and fighter jets—both are modes of transportation subject to many of the same FAA regulations, but not all the same regulations since they serve much different purposes. The same is

---

[1] Technically, a Cybertruck could be considered a "sedan." *See* Cambridge Dictionary Online, available at https://dictionary.cambridge.org/us/dictionary/english/sedan (last visited October 27, 2025) (defining the term "sedan" as a "a car with seats for four or five people, two or four doors, and a separate area in the back for bags, boxes, and suitcases")

true here for TCPA. While texts and calls may both generally facilitate communication, they are **_separate and distinct_** forms of communication subject to different rules.

Resisting this logical conclusion, Plaintiff relies upon "longstanding" FCC interpretation to support her argument that the "plain meaning" of the word "call" somehow includes technology that did not yet exist at the time the TCPA was enacted. *See* Dkt. 30 at 16. According to Plaintiff, the FCC may simply "fill up the details" however it likes to expand the reach of the TCPA to new forms of communication. However, Congress granted the FCC time-limited authority to enact regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." The time for that rulemaking expired <u>in 1992, long before the FCC amended Section 227 to include text messages</u>. *See* 47 U.S.C. § 227(c)(2). Neither the TCPA nor Congress expressly regulated text messages at that time, nor could they because texts did not exist, as even Plaintiff acknowledges. Thus, this Court cannot "legislate by reading into the TCPA something that is not there." *Jones*, 2025 WL 2042764, at \*5 (C.D. Ill. July 21, 2025). *See also Davis*, 2025 WL 2491195, at \*2; *El Sayed,* 2025 WL 2997759, at \*2.

Plaintiff's argument also ignores the Supreme Court's recent pronouncements, which make clear that this Court "is not bound by the FCC's interpretation of the TCPA" and instead "must independently determine for itself whether the agency's interpretation of a statute is correct" and "must determine the meaning of the law under ordinary principles of statutory interpretation" to do so. *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation,* 606 U.S. 146, 155, 168 (2025) (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402 (2024)). The *Jones*, *Davis*, and *El Sayed* courts, *supra*, properly followed these edicts and found Section 227(c) does not apply to texts. Plaintiff's Opposition gives no valid basis for this Court to rule differently here.

Even assuming *arguendo* that Section 227(c) applied to texts, Plaintiff's entire FAC should still be dismissed because Plaintiff fails to plausibly allege that Newity bears any liability for the text messages she purportedly received. As the Motion shows, federal law is clear that one cannot simply regurgitate the statutory text, conclude "the defendant or its agents" texted me for telemarketing purposes, and expect to state a plausible TCPA claim and avoid dismissal under Rule 12(b)(6). That is all Plaintiff attempted to do here. As the FAC represents Plaintiff's second bite at the apple, she should not be offered a third opportunity. Therefore, the FAC should be dismissed with prejudice.

## I. Section 227(c) of the TCPA Does Not Cover Text Messages.

Plaintiff admits, as she must, that Section 227(c) of the TCPA does not reference text messages, but suggests texts are still covered because "[t]he statute defines a 'telephone solicitation' in relevant part to mean 'the initiation of a telephone call or message … which is transmitted to any person.'" Dkt. 30 at 1 (citing 47 U.S.C. § 227(a)(4)). However, this interpretation reads terms into the TCPA that did not exist at the time the TCPA was enacted. As discussed in the Motion, the reference to "message" presumably refers to ***artificial or prerecorded voice*** "messages," which were expressly regulated by the TCPA at the time of its enactment and fall under a different part of the statute that Plaintiff does not invoke here (*i.e.*, Section 227(b)), and not Section 227(c). *See* Dkt. 23 at 5 (citing *Tel. Solicitations, Autodialed & Artificial or Prerecorded Voice Message Tel. Calls, & the Use of Facsimile Machines*, 8 FCC Rcd. 480 (1993)).

Plaintiff's Opposition simply ignores and does not address Newity's argument in this regard, instead arguing that the term "telephone solicitation" is "more concerned with the purpose of the telephone communications [that are prohibited] than the form in which those communications are transmitted." Dkt. 30 at 4 (citing *Wilson v. Medvidi, Inc.*, 2025 WL 2856295, at *3 (N.D. Cal. 2025)). Plaintiff is wrong. The TCPA's limited scope does not even regulate all calls, much less all communications regardless of the form in which they are transmitted. *See Ashland*, *supra*. For this

4

reason (among others), *Medvidi* is inapposite on this point. There, the court focused on the general "purpose" of the communication—*i.e.,* whether it was intended to "encourage" a "purchase" such that it qualified as a "telephone solicitation" under Section 227(c)—regardless of the form in which it was transmitted. *See* 2025 WL 2856295, at *2.[2] But adopting such a ruling here would arguably extend TCPA liability to emails and other forms of communication received on a phone, so long as the "purpose" of the communication fell within the general purview of the TCPA. That would lead to absurd results and is plainly not the law. *See, e.g., McCarrell v. Offers.com LLC,* 2019 WL 3220009, at *3 (W.D. Tex. July 16, 2019), *report and rec. adopted,* 2019 WL 6048012 (W.D. Tex. Aug. 20, 2019) ("[T]he mere fact that emails sent to an email address are read on a smartphone does not bring them within the TCPA."); *see also Ashland*, *supra*. Emails are not covered by Section 227(c), or the TCPA at all, even if they encourage a purchase. *See, e.g., McCarrell*, 2019 WL 3220009, at *3. Live calls to a residential number <u>not</u> registered on the National DNC Registry (an obvious prerequisite to such a claim) likewise would not be covered by Section 227(c), even if the caller encouraged a purchase. *See* 47 C.F.R. § 64.1200(c)(2) (DNC regulations covering a "telephone solicitation" made to "a residential telephone subscriber who has registered his or her telephone number on" the National Registry). In short, form matters too.

*Hulce* does not support Plaintiff's argument, either. *See* Dkt. 30 at 4, 10 (citing *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025)). In fact, the *Hulce* court refused to interpret the term "telephone solicitation" to cover all commercial calls "given Congress's distinct use of these terms in separate TCPA provisions." 132 F.4th at 499. In other words, the Seventh Circuit refused to read substance into the definition of "telephone solicitation" that Congress did not expressly include

---

[2] Also problematic on this point is that, while the court paid lip-service to *McLaughlin*, it ultimately relied heavily on pre-*McLaughlin* decisions from the Ninth Circuit for its holding (most of which either relied solely on non-binding FCC guidance or were interpreting Section 227(b)) and it did not engage in a proper statutory construction analysis. *Id.* In sum, *Medvidi* is of no moment on this front.

(which is what the *Medividi* court did). Here too, the Court should not read the phrase "telephone call or message" in Section 227(a)(4) to include a type of "messaging" technology that simply did not exist when the statute was enacted, and thus that Congress could not have possibly contemplated, at the time that phrase was written into the TCPA. *See* Dkt. 23 at 5-6 (citing, *inter alia*, *Jones*, 2025 WL 2042764, at \*4 and *Davis*, 2025 WL 2491195, at \*2 (ruling similarly).

Tacitly recognizing this, Plaintiff doubles down and argues the Court may still interpret the TCPA to include text messages because, according to her, "the FCC has [] made clear in a series of orders and, more recently, in a formal regulation that this rule applies to anyone 'making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers.'" Dkt. 30 at 5-9; *see also id*. at 17-18 (discussing "deference" to FCC interpretations); *id*. at 20 (arguing Congress "explicitly directed the FCC in § 227(c)(1) to 'initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights' and to adopt regulations it determines are 'most effective and efficient.'"). However, Plaintiff's argument here ignores the express limitation in 47 U.S.C. § 227(c)(2), which restricted the FCC's rulemaking authority under Section 227(c) of the TCPA to the "9 months after December 20, 1991." Those regulations were implemented in ***1992***, and do not refer to text messages. *See* 47 C.F.R. § 64.1200(c).

Moreover, prior to 2023, every instance in which the FCC addressed whether text messages were covered under the TCPA was rendered pursuant to the FCC's rulemaking authority under the automated call provisions in Section 227(b)—which, unlike the limited and long-expired rulemaking authority under the DNC provision Section 227(c), is virtually unlimited in time and scope. *See In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14037-39 (2003) (addressing texts only in the context of TCPA's automated calling provisions); *see also* 47 U.S.C. § 227(b)(2). And when the FCC finally interpreted Section 227(c)

to apply to texts in 2023, it did so without any authority, without a proper notice and comment process, and thus "arbitrarily and capriciously." *See In Re Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the TCPA of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 F.C.C. Rcd. 12247, 12256-57 (2023).

In any event, the FCC's interpretation is not dispositive. While Plaintiff is correct that *McLaughlin* allows lower courts to afford "respect" to FCC interpretations, it does ***not*** instruct courts to afford any ***deference*** to FCC interpretations—particularly if the FCC lacks authority in the first place. *See McLaughlin,* 606 U.S. at 168; *see also Davis*, 2025 WL 2491195, at *4. Respect to agency interpretations is only warranted "when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper,* 603 U.S. at 386; *see also Davis,* 2025 WL 2491195, at *1 ("Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."). The FCC's 2023 interpretation is certainly not "contemporaneous" or "consistent" with the TCPA's enactment or the FCC's short-term rulemaking authority under Section 227(c). *See In Re Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the TCPA of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 F.C.C. Rcd. 12247, 12256-57 (2023).

Further, even prior to *McLaughlin*, federal district courts (including in this District) refused to afford deference to FCC interpretations that were issued without proper notice and comment, as Plaintiff's own authorities confirm. *See Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1006 (N.D. Ill. 2010) ("As a result of the FCC's failure to invite more specific comments on the application of the TCPA to text messaging [under Section 227(b)], the Court declines to

afford complete deference to the FCC's interpretation."). The same failures exist here, thus negating any degree of "respect" that may otherwise be due to FCC interpretations.

The "contemporary dictionary definitions" of the terms "call" and "transmit" do not support Plaintiff's argument, either. *See* Dkt. 30 at 6-7, 9-10. According to the Supreme Court, those terms must be interpreted consistent with Congress' understanding of the terms ***at the time the TCPA was enacted***. *See Loper*, 603 U.S. at 400 ("Every statute's meaning is fixed at the time of enactment."); *see also Davis,* 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025) (stating that the terms in Section 227(c) of the TCPA must be "supported by the ordinary public meaning at the time of the provision's enactment"). As discussed in the Motion, however, courts have correctly held that "telephone call or message" as used in Section 227(a)(4) could <u>not</u> have been interpreted <u>in 1991</u> (when the TCPA was enacted) to include ***text*** messages regardless of their dictionary definition because texts were <u>not yet in existence</u> then. *See* Dkt. 23 at 5-8 (citing *Jones*, 2025 WL 2042764, at *4 and *Davis*, 2025 WL 2491195, at *2); *see also El Sayed,* 2025 WL 2997759, at *2. Plaintiff's authorities on this front evaluate "calls" under Section 227<u>(b),</u> which again is not at issue here. *See* Dkt. 30 at 6-8 & n.5 (citing *Satterfield, Lozano*, *Ashland, Gager, Keating, Hudson*). Further, as discussed above, the FCC's rulemaking authority under Section 227(b) is much broader than its limited authority under Section 227(c). Thus, these authorities are unpersuasive for this additional reason.

Plaintiff next argues that the "established meaning of the word 'call' is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA." *See* Dkt. 30 at 7. However, as one court in the Northern District of Florida correctly recognized, "Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [the plaintiff's] position" and "shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis*, 2025 WL 2491195, at *2. The *Davis* court went a step further, stating that

"[a]lthough [the plaintiff] would have me conclude Congress used the term 'telephone call' in § 227(c)(5) and the term 'telephone call or message' in § 227(a)(4) to have identical meanings, courts should 'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Id*. (citing *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025)).

Just recently, another district court "agree[d] with and adopt[ed] Judge Winser's opinion [in *Davis*] that 'the statutory text here is clear, and a text message is not a 'telephone call.'" *El Sayed,* 2025 WL 2997759, at *2. The *El Sayed* court correctly recognized that "[i]n addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction." *Id*. Thus, "[t]he omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call.'" *Id*.

Plaintiff's cited authorities on this front are also distinguishable, as none of those cases involved deference to prior FCC interpretations as to whether a text message is a call under Section 227(c). *See* Dkt. 30 at 9 (citing *Harriel* and *Cacho*, discussing whether a cell phone is "residential" under the TCPA). And while some district courts in other circuits have reached a different conclusion, their holdings are not persuasive here. In *Wilson v. Skopos Fin., LLC*, the court relied heavily on FCC authority relating to Section 227(b) which, again, is not at issue here and in any event is not entitled to deference. *See* 2025 WL 2029274, at *4 (D. Or. July 21, 2025). Further, the court in *Medvidi* improperly focused on the purpose of the communication, regardless of its form which, as discussed above, would extend TCPA liability far beyond what Congress intended. In

sum, the Court should reject Plaintiff's inapposite cases and follow the well-reasoned decisions in *Jones*, *Davis*, and *El Sayed*, which are based on the plain language of the statute and are far more persuasive.

Finally, Plaintiff argues that "statutes must be permitted to apply to technologies not in existence when a statute was drafted." Dkt. 30 at 12-13 (citing *Lozano*, *Medvidi*, *Hively*, *Wis. Cent. Ltd.*, *Squillacote*, *Nat'l Cable & Telecom Ass'n* and *New Prime Inc.*). However, the Supreme Court expressly declined to read additional protections into the TCPA based upon subsequent advances in technology, instead holding that it "must interpret what Congress wrote." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021). The same conclusion is warranted here. Further, as discussed above, text messages and calls are separate and distinct forms of communication. Therefore, there is no basis to extend calling regulations to text messages absent legislation by Congress.

## II. **Plaintiff Fails to Plausibly Allege a Theory of TCPA Liability Against Newity.**

As to Newity's argument that Plaintiff has failed to sufficiently plead a theory of TCPA liability (*see* Dkt. 30 at 22-24), Plaintiff's Opposition does not address the arguments in the Motion on vicarious liability, and focuses instead (albeit ineffectively) only on <u>direct</u> TCPA liability. *See id*. By not addressing vicarious liability, she has conceded the issue. *See Tuso v. Lennar Corp.,* 2024 WL 1239474, at *3 (S.D. Fla. Mar. 22, 2024) (dismissing, deeming the plaintiff conceded defendant's TCPA liability argument in a motion to dismiss by not addressing it in his opposition) (citing various cases); *see also Younge v. Berman*, 2023 WL 2374781, at *6 (N.D. Ill. Mar. 6, 2023) (deeming argument for dismissal conceded by failing to address in opposition to the motion to dismiss). Therefore, the FAC should be dismissed on vicarious TCPA liability grounds.

Plaintiff fares no better at defending her conclusory and contradictory direct TCPA liability allegations. In that regard, Plaintiff contends that "courts routinely treat a company as the initiator where the message itself identifies that company and promotes its own products or services." *See*

Dkt. 30 at 22. Not so. The Motion demonstrates that, for good reason, the alleged content of the subject communications alone is not dispositive of this issue and that more factual enhancement is needed. *See* Dkt. 23 at 11-12 (citing *Meeks*, *Belleville*, *Murray*, *Bennett*). Plaintiff does not provide such factual enhancement. Plaintiff's FAC does not allege (and her Opposition does not argue), for example, that (i) her Caller ID identified "Newity" as the sender of each (or any) text; (ii) she ever communicated with any Newity ***employee*** through these text messages, or (iii) Newity owns or uses the phone number used to send them. Plaintiff's suggestion to the contrary is unsupported. *See* Dkt. 30 at 22-23. Such factual allegations, in addition to the content and if properly pled, ***may*** be sufficient to plead direct TCPA liability in some cases. *See* Dkt. 23 at 11-12 (citing *Meeks*, *Belleville*, *Murray*, *Bennett*). Without them, however, Plaintiff has not plausibly alleged anything more than the fact that Newity stood to benefit from the text messages. This is insufficient to plausibly allege direct TCPA liability. *See Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 578 (W.D. Pa. 2017) (rejecting plaintiff's "broad sweeping extension of [TCPA] liability, whether direct or vicarious, to parties merely because they 'stand to benefit' from the call").

Plaintiff's cited authorities on this front do not compel a different result. *See* Dkt. 30 at 22-24. For example, the court in *Lozano* did not even discuss or apply the pleading standards for direct or vicarious liability. *See Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). Thus, *Lozano* has no application to this case.

Plaintiff also relies on *Bradshaw v. CHW Grp., Inc*., 2025 WL 306783 (D.N.J. Jan. 24, 2025). However, *Bradshaw* and in each decision on which that court relied for its opinion, stands in stark contrast to the vast weight of well-reasoned applicable federal authority on the accepted standards for pleading direct TCPA liability cited in the Motion and here. In fact, that court did not even ***discuss*** (let alone properly apply) those established standards in its opinion—*i.e.,* that the plaintiff needed to

plausibly allege, with non-conclusory facts, that the defendant itself "physically" placed each of the subject calls directly to him. In short, *Bradshaw* has no persuasive value.

Moreover, the *Bradshaw* court only acknowledged that "at first glance" the plaintiff's argument that the caller identified the defendant "seem[s]" like a basis for attributing the call to the defendant. *Id.* at *2. At the same time, the *Bradshaw* court acknowledged that "dishonesty about one's identity [over the phone] is at least somewhat common—and therefore, it will not always make sense to conclude that the person on the other end of the line is who they say they are." *Id*. at *3. In other words, the *Bradshaw* court seemingly acknowledged that the mere content of a call alone is an insufficient basis on which to infer direct TCPA liability. But crucially, the court relied on neither of these theories and, instead, relied on other factual allegations pled in that case (which are not pled here) to conclude that the defendant indeed placed the calls at issue—the plaintiff had affirmatively reached out to the defendant and spoke to an employee there. *Id*. at *3. Plaintiff does not allege such facts in her FAC. Thus, even if *Bradshaw* were well-reasoned (and it is not), it is inapplicable here.

The cases cited within the *Bradshaw* opinion, as quoted in Plaintiff's Opposition, are likewise easily distinguishable. *See* Dkt 30 at 23-24 (citing various authorities). For example, in *Marks v. Unique Lifestyle Vacations, LLC*, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024), the plaintiff alleged that he actually spoke to the callers, asked them to identify themselves, and that he compared the incoming phone numbers to phone number lists on the internet where consumers complained about telemarketing from the same defendant. In *Taylor v. Suntuity Solar LLC*, 2024 WL 964199, at *1-6 (M.D. Fla. Mar. 6, 2024), the plaintiff alleged *inter alia* that: (a) the only two calls at issue both originated from the same number, (b) both "followed the same script," and (c) she received an email from "a call center agent of the Defendant" immediately following the second call. In *Slominski v. Globe Life Inc.,* 2024 WL 556978, at *1 (E.D.N.C. Feb. 12, 2024), the plaintiff allegedly received

several identical pre-recorded calls from the defendant, all originating from the same number and each asking her to call the defendant back. And in *Stemke v. Marc Jones Constr., LLC,* the plaintiff alleged that she or her attorneys somehow "***confirmed***" that one of the phone numbers used by one of the callers "***belong[ed]*"** to the defendant. 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021) (emphasis added). No such facts are pled here.

Further, like the court in *Bradshaw*, the court in *Katz v. CHW Grp., Inc.,* 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023), also did not discuss the accepted standards for pleading direct TCPA liability in its decision; and it did not follow those standards when it incorrectly credited only the alleged content of the subject calls and the plaintiff's conclusory allegations there. In *Smith,* the court seemingly misapplied and conflated the standards for pleading "traceability" for Article III standing purposes under Rule 12(b)(1), where an alleged indirect connection to a call might suffice to show standing and avoid a dismissal in some cases, with the more precise standards for pleading TCPA liability theories under Rule 12(b)(6), where an alleged indirect connection is not enough for direct TCPA liability or to avoid a dismissal on this basis, as discussed in the Motion and above. *See Smith v. v. Am.-Amicable Life Ins. Co.*, 2022 WL 1003762, at *1–2 (E.D. Pa. Apr. 4, 2022).[3] In short, *Katz* and *Smith* likewise were wrongly-decided, are unpersuasive, and are of no moment in this case.

The *Adam* opinion apparently completely misinterpreted or misapplied the defendant's cited authorities on this issue (*i.e., Aaronson*, *Frank* and *Sheski*, all of which are cited in Newity's Motion here), and incorrectly held that those plaintiffs "made no allegations that the defendant placed the calls at issue." *Adam v. CHW Grp., Inc.,* 2021 WL 7285905, at *6 (N.D. Iowa Sept. 9, 2021)). In reality, the plaintiffs in each case had alleged, in a conclusory and equivocating fashion, that either

---

[3] These are distinct legal concepts with different pleading requirements, as other courts have found. *Cf. Bank v. GoHealth, LLC,* 2021 WL 2323282, at *6–12 (E.D.N.Y. Mar. 8, 2021), *report and rec. adopted,* 2021 WL 1884671 (May 11, 2021) (correctly applying these standards)

the named defendants physically initiated (or were so involved as to be deemed to have physically initiated) the at-issue calls, and/or that third parties did.[4] That is precisely what Plaintiff did here. *See* Dkt. 23 at 12-14.

Indeed, the Motion also demonstrates that Plaintiff's FAC repeatedly and contradictorily alleges that either Newity itself sent the texts <u>or</u> unknown third parties did. But this "either/or" approach to pleading TCPA liability has been squarely rejected by myriad courts. *See* Dkt. 23 at 12-14 (collecting case). Plaintiff does not address Newity's argument in this regard, once again conceding that her "either/or" pleading approach is insufficient to plausibly allege either theory of liability. *See Tuso* and *Younge*, *supra*.

Finally, Plaintiff seemingly argues that whether Newity actually, physically sent the text messages at issue is a topic for discovery, not a Rule 12 motion. Dkt. 30 at 25. Though this assertion comes at the end of her argument on direct liability, it is perhaps the "death knell" to her FAC on that front. Indeed, it is axiomatic that the Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009). As one federal district court dismissing a TCPA claim on this basis aptly held:

> As master[s] of [their] Complaint, it is [a TCPA plaintiff's] burden to state the facts within [their] knowledge that, taken as true, constitute a violation or violations of law. [Plaintiffs] possess[] knowledge as to each and every telephone call [they] [allegedly] received from [the defendant] and [are] perfectly capable of pleading facts to indicate to the Court that those calls violated the TCPA. As [Plaintiffs] failed to plead these facts, [their] Complaint must be dismissed pursuant to Rule 12(b)(6).

*Hyatt v. J.B. Hunt Transp. Servs., Inc*., 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015). *See also Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery

---

[4] *See Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019); *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2–3 (E.D. Wash. Oct. 1, 2019); *Sheski v. Shopify,* 2020 WL 2474421, at *2–4 (N.D. Cal. May 13, 2020).

where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"); *see also Beckman v. Chicago Bear Football Club, Inc.*, No. 17 C 4551, 2018 WL 1561719, at *7 (N.D. Ill. Mar. 30, 2018) ("The complaint must still state a plausible claim to unlock the door to discovery."). Put in context of a TCPA case, Plaintiff's suggestion that she needs discovery to confirm who texted her and how that person is related to Newity is tantamount to a concession that she is not pleading actual facts in accordance with the federal pleading standards and does not actually know who called (or in this case, texted) her and thus that she has not adequately pled a direct TCPA liability theory in this case. *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6-7, 10. (E.D. Va. Nov. 12, 2020) (dismissing TCPA claim on this basis).

All told, the Motion shows Plaintiff has not plausibly alleged a TCPA liability theory, in accordance with the weight of applicable federal law and the bedrock *Iqbal/Twombly* standard. The Opposition does not show otherwise. As such, the entire FAC should be dismissed on this basis.

Dated: October 30, 2025                              Respectfully submitted,

By: /s/ A. Paul Heeringa

                    A. Paul Heeringa (IL ARDC #6288233)
                    **MANATT, PHELPS & PHILLIPS, LLP**
                    151 N. Franklin St., Suite 2600
                    Chicago, Illinois 60606
                    Telephone: (312) 529-6300
                    Email: pheeringa@manatt.com

                    *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF

docket on October 30, 2025, which served same electronically upon all counsel of record.

By: */s/ A. Paul Heeringa*